MILLER v. WHYTE.

4-4692

Opinion delivered June 14, 1937.

*Arthur D. Chavis,* for appellant.

*E. W. Brockman,* for appellees.

MEHAFFY, J. Caesar Miller, Sr., was the owner of lots 22 and 23 of block 2, LeRoy's Addition to the city of Pine Bluff, Arkansas. This property was the homestead of Caesar Miller, Sr., and his wife, Paralee Miller, until some time in August, 1911, when his wife obtained a divorce from Caesar Miller, Sr., in which proceedings the property herein involved was decreed to Paralee Miller to occupy and use only during her natural life. The title in reversion remained in Caesar Miller, Sr., until the death of Paralee Miller or until his own death.

The decree of divorce, which was introduced in evidence, recites "that by agreement of the parties to this action the property rights have been agreed upon and settled and shall be ordered and decreed herein."

There were introduced in evidence copies of the following instruments:

"1. Deed from William Burke and wife to Caesar Miller, dated December 21, 1901, appearing in deed record 60 at page 594.

"2. Deed from L. T. Sallee, county clerk, to A. G. Kahn, dated June 16, 1926, appearing in deed record 112 at page 570.

"3. Deed from Paralee Miller to Creed Caldwell, dated January 19, 1926, appearing in deed record 121 at page 160.

"4. Commissioner's deed from C. M. Nichol to Creed Caldwell, dated December 17, 1926, appearing in deed record 122 at page 394.

"5. Deed from A. G. Kahn and wife to Creed Caldwell, dated March 21, 1927, appearing in deed record 124 at page 500.

"6. Deed from A. G. Kahn and wife to Creed Caldwell, dated May 12, 1927, appearing in deed record 124 at page 572.

"7. Deed from Caesar Miller and wife, Ella Miller, James Miller and Verne Miller to Paralee Miller, dated November 12, 1924, appearing in deed record 142 at page 256.

"8. The divorce decree in the case of Paralee Miller vs. Caesar Miller, dated August 12, 1911, appearing in chancery court record R at page 504."

Caesar Miller, Sr., died August 18, 1925. Lillie Miller Turner died without issue September 13, 1927. Paralee Miller died December 15, 1929, leaving Caesar Miller, Jr., as the sole surviving heir at law of Caesar Miller, Sr.

This suit was brought by Caesar Miller, Jr., on February 11, 1935, who claimed to be the owner of the above described property, and claimed that all of the conveyances were void.

Answer was filed denying the allegations of the complaint by Charles Whyte, son-in-law, and as administrator of the estate of, Creed Caldwell, deceased, and alleging that the property belonged to the estate of Creed Caldwell, deceased. Creed Caldwell died in December, 1934.

The appellant testified that he was 56 years old and lived at Collinston, Louisiana; that Caesar Miller, Sr., was his father, and that he died August 18, 1925; that his father owned the property involved. He testified that while his father and mother were not living together at the time of his father's death, that they were not divorced. The court record, however, shows that they were divorced. He, also, testified that while his mother lived on the property, that his father paid the taxes until 1925.

We deem it unnecessary to consider or decide whether the deeds mentioned are valid or not, except the deed from A. G. Kahn to Creed Caldwell, because if this deed is valid, the appellant could not recover, even if all of the other deeds and conveyances might be void.

A. G. Kahn and wife made two deeds, one dated March 21, 1927, and the other dated May 12, 1927.

The property involved forfeited for the nonpayment of taxes in 1923, and was deeded to A. G. Kahn in 1926. There is no evidence anywhere indicating that there was any irregularity about the sale of this property or the purchase of it by Kahn, and no evidence of any collusion between Kahn and Caldwell. Caldwell acquired posses-

sion of the property in 1926, and this property was held by his administrator after his death.

The appellant was 56 years old and knew that his father paid the taxes and evidently knew about the agreement as to the property when his father and mother sep-. arated. Appellant says that the life tenant permitted the property in question to sell for county and state taxes in 1923, and to be bought by A. G. Kahn, who received a tax deed to same in 1926, after the life tenant, Paralee Miller, had attempted to convey to Creed Caldwell, and then A. G. Kahn conveyed it back to Creed Caldwell by deed in 1927, in an effort to acquire title thereto, or to strengthen his claim of title already acquired from the life tenant.

There is no evidence anywhere that the life tenant was under obligation to pay taxes on the property. The decree of the chancery court awarded her the use of this property during her lifetime. She never paid any taxes, and the appellant testifies that his father paid the taxes until 1925, and the presumption is that that was the agreement between the parties.

Section 10054 of Crawford & Moses' Digest reads as follows: "If any person who shall be seized of lands for life, or in right of his wife, shall neglect to pay the taxes thereon so long that such lands shall be sold for the payment of the taxes, and shall not within one year after such sale redeem the same according to law, such person shall forfeit to the person or persons next entitled to such land in remainder or reversion of all the estate which he or she, so neglecting as aforesaid, may have in said lands, and the remainderman or reversioner may redeem the lands in the same manner that other lands may be redeemed after being sold for taxes; and, moreover, the person so neglecting as aforesaid shall be liable in an action to the next entitled to the estate for all damages such person may have sustained by such neglect."

Appellant contends that it was the duty of the life tenant and those holding under her to pay said taxes during the life tenancy, and said tax sale and purchase will be treated as a redemption of said property, and could not convey any title as against the reversioners.

The section from Crawford & Moses' Digest above quoted has reference to a life tenant whose duty it is to pay the taxes. It provides, also, that the remainderman or reversioner may redeem the land in the same manner that other lands may be redeemed after being sold for taxes. No effort was ever made at any time by appellant or his father, during his lifetime, to redeem the lands.

Appellant calls attention to *Galloway* v. *Battaglia*, 133 Ark. 441, 202 S. W. 836. The court said in that case: ''In the case of *Magness* v. *Harris*, 80 Ark. 583, 98 S. W. 362, we said that the manifest purpose of this statute is to afford the remainderman an opportunity to redeem during the last of the two years allowed by law for redemption of lands from a valid tax sale, and to cause a forfeiture of the estate of the life tenant for failure to redeem from such sale within the first year.'' The statute referred to has no application here, because there is no evidence that the life tenant was to pay the taxes, but the appellant says that Caesar Miller, Sr., paid the taxes to the time of his death.

The evidence in this case shows that the occupancy of the house was given to Paralee Miller as alimony. The court, of course, had the right at any time, if conditions changed, to change his order with reference to alimony, and, as we have said, there is no charge that the taxes of 1923 were improperly assessed against the land, or that there was any irregularity in the forfeiture or sale, and there is no evidence as to any collusion between Kahn and anybody.

The chancellor, after a consideration of the evidence, made a general finding in favor of appellees. We have also considered all the evidence, and are of the opinion that the tax sale to Kahn was valid; in fact, it is not denied that it was valid, and no effort was ever made to redeem it either from this sale or from any other sale.

We have reached the conclusion that the decree of the chancellor is supported by a preponderance of the evidence, and it is, therefore, affirmed.